FLORENCE MITCHELL RAND *v.*
ROBERT COLLOM RAND

[No. 220, September Term, 1971.]

*Decided December 9, 1971.*

The cause was argued before THOMPSON, MOYLAN and GILBERT, JJ.

*John T. Bell,* with whom were *Charles W. Bell, Frank S. Cornelius, Bell & Bell* and *M. Albert Figinski* on the brief, for appellant, cross-appellee.

*Robert S. Bourbon* for appellee, cross-appellant.

GILBERT, J., delivered the opinion of the Court.

Florence Mitchell Rand (Florence), appellant and cross-appellee, and Robert Collom Rand (Robert), appellee and cross-appellant, are both dissatisfied with some provisions of a decree of divorce entered in the Circuit Court for Montgomery County.

The parties were married on January 26, 1942 in Lexington, Kentucky. Since that time both have been residents of Maryland. Three children were born as a result of the marriage; however, only one child, a minor, age 13, is the subject of the child support order here present.

In October, 1964, the parties separated and have continued to live separate and apart since that time.

Robert filed a Bill of Complaint in July, 1970, seeking a divorce *a vinculo matrimonii* on the ground of five years continuous uninterrupted separation.[1]

---

1. Art. 16, § 24; *Buckheit v. Buckheit,* 10 Md. App. 526 (1970).

The testimony clearly established the validity of the ground for divorce and that portion of the decree is not under attack.

When Florence was called as a witness, Robert objected to her being allowed to testify as to her need for alimony, child support, and her request for reimbursement of an orthodontic bill contracted on behalf of the minor child. The reason assigned for the objection was that Florence had requested alimony, child support and the reimbursement of the orthodontic bill in her Answer to Robert's Bill of Complaint,[2] and had not filed a Cross-Bill affirmatively seeking such relief. The court allowed the testimony over objection.

Robert had, at the time of the trial, a gross income of $2,057.00 per month. He claimed deductions of $852.00, thus leaving him a "take home" income of $1205.00. Robert asserts that his monthly expenses are $1077.00 (including the child support payment of $250.00 and $100.00 per month voluntary payments made to his son and daughter, respectively). Therefore, Robert maintains he is left with $128.00 per month after all expenses for his cost of living. Robert's financial statement as presented in evidence also indicated that he has $11,050.00 in bank accounts.

Florence is a school teacher and receives a salary of $790.00 per month, less deductions of $340.00. She asserts that her total expenses for herself and her child are $790.00, resulting in a deficiency of $340.00 a month. This figure, however, does not allow for the $250.00 per month that Robert has been paying for the support of the minor child.

After the separation of the parties, Florence continued to maintain what was the marital domicile and apparently paid off the mortgage so that the property in which she and the child reside is unencumbered by a mortgage lien. Florence has also paid the real property taxes and

---

2. The latter was apparently sought under the general prayer for relief as it was not specifically requested in the Answer.

other maintenance costs of the house. Seemingly, Robert is also in title to the house with Florence. The house, according to the testimony of Florence, is valued at approximately $28,000.00.

Florence did not testify as to any specific sum that she needed in the way of alimony, but said, "Whatever is fair. That is all I can say; whatever is fair. I have no idea what would be fair. All I know is I don't think I should be left to live below the standard of Montgomery County. And I must under my present salary."

Robert objects to the payment of the orthodontic bill or any portion thereof because he was not consulted prior to the commencement of the orthodontist's work on his daughter, although he admittedly was aware that the services were being performed, and he likewise objects because he asserts that the $250.00 per month child support is sufficient, in his opinion, to include payment of the orthodontic bill.

Florence, in her testimony, itemized the child's needs for clothes, food and other usual expenses.

At the conclusion of the testimony and argument of counsel, the Chancellor granted Robert a divorce, awarded Florence $75.00 per month alimony, declined to alter or modify the child support payment, ordered Robert to pay Florence the sum of $650.00 in partial reimbursement of monies she had expended in payment of the orthodontic bill,[3] and further ordered the payment of $600.00 to Florence's counsel.

Florence here contends:

    1. The award of alimony is inadequate.

    2. The amount of child support is insufficient and Robert should have been required to pay the orthodontic bill in its entirety and not just a portion thereof.

Robert argues:

    1. No alimony should have been awarded.

    2. The amount of child support is adequate.

---

3. The total bill was variously described as "the exact figure * * *, around $1300.00"; and "$1217.00."

3. The Chancellor erred in requiring Robert to pay any portion of the orthodontic bill.

4. The amount awarded as counsel fee should not have been allowed.

### ALIMONY

Robert argues that the Chancellor should not have awarded alimony to Florence because she did not seek the same by way of a Cross-Bill. He cites *Ballan v. Ballan,* 251 Md. 737; *Keys v. Keys,* 251 Md. 247; *Woodham v. Woodham,* 235 Md. 356, and *Henderson v. Henderson,* 199 Md. 449, as authorities for his contention. Our review of those cases does not indicate to us that they are applicable to the situation in the instant case.

In *Ballan,* Judge Singley discussed constructive desertion and equity appeals. At page 743 he said:

> "In her brief, Mrs. Ballan seeks to have the amount of the fee allowed her counsel increased from $250. to $750. Since no cross appeal was taken, this question is not properly before us. Rule 812 a; * * *."

*Keys* holds that where no cross appeal is filed, the Court of Appeals will not consider a statement in appellee's brief to the effect that he "hereby appeals from the orders charging him with payment of appellant's costs incident to this appeal * * *."

The *Woodham* ruling modified an order of the trial court that had increased *sua sponte* child support payments, where no request was made for such an increase.

*Henderson* involved a Bill for divorce *a mensa et thoro* and a Cross-Bill for an annulment. The Chancellor granted the divorce *a mensa et thoro* and dismissed the Cross-Bill. There, the Court was concerned with the validity of a common law marriage entered into in a jurisdiction where it was recognized. The Cross-Bill had alleged that the parties were not married because the husband (cross-plaintiff) was not divorced at the time he married the plaintiff and cross-defendant in Iowa. The

wife (plaintiff and cross-defendant) answered the Cross-Bill and alleged that the parties lived together as husband and wife in the District of Columbia, where common law marriages were valid, after the dissolution of the husband's first marriage and subsequent to the purported formal marriage in Iowa. The factual situation in *Henderson* is inapposite. Judge Delaplaine in *Henderson*, at page 461, said:

> "A cross-bill is a proceeding to obtain a complete determination of a matter already in litigation in the court. As a general rule, whenever the defendant relies upon the equities of his case for anything beyond defense and seeks affirmative relief, he should file a cross-bill."

Appellant gleans from this statement in *Henderson* that Florence's failure to file a Cross-Bill claiming alimony and reimbursement of the orthodontic bill precludes her from obtaining the same. No such argument is advanced insofar as the child support is concerned.

We think the question of alimony was properly before the trial judge.

Article 16, § 3, of the Maryland Code provides:

> "In cases where a divorce is decreed, alimony may be awarded."

An examination of the case law in this state fails to indicate any case in support of Robert's position insofar as alimony is concerned. While the specific point here raised was not present in *Buehler v. Buehler*, 229 Md. 317 (1962), the Court of Appeals there considered a case wherein the husband brought suit for a divorce *a vinculo matrimonii* on the ground of voluntary separation. The wife, in answering the Bill, admitted her then income was sufficient to provide for her then needs, but requested that the court reserve the question of alimony "for future award in accordance with the circumstances of the parties." The trial court granted the relief prayed by the husband as to the divorce but reserved the ques-

tion of alimony. The Court of Appeals affirmed the decision of the trial court.

It has been held in *Munich Co. v. United Surety Co.*, 113 Md. 200, 77 A. 579 (1910), that the defendant in an equity suit may ask for relief against the plaintiff by his answer instead of by cross-bill. The Court of Appeals said:

> "* * * In this State the practice of allowing cross-relief to be sought by answer instead of by a cross-bill, when that can be done with justice to all parties, was early adopted, *Alexander's Chy. Prac.* 111, *Young v. Twigg*, 27 Md. 632, * * *,
>
> * * *
>
> "* * * under our practice the answer of the defendant asking for such relief may be treated as in the nature of a cross-bill, and * * * in a case of this character it is desirable to dispose of the whole matter in controversy, * * *"

In *Young v. Twigg, supra,* the Court of Appeals, in quoting from the opinion of the trial judge, said:

> "Where possible, the answer is viewed in the light of a cross-bill, and made the foundation for a decree. Alexander's Ch. Pr. 111; Story's Eq. Pl. 394; * * *"

Article 16, § 3, *supra,* is explicit in its terms. A trial judge *may* award alimony in any case wherein a divorce is granted. *Buehler* allowed the trial court to reserve the question of alimony for future resolution, and that request was, as we have noted, embodied in the Answer. We can conceive of no rhyme or reason why child support and alimony cannot be prayed in an Answer to a Bill of Complaint in a divorce case. This is particularly so where, as here, there is a non-culpatory type of divorce proceeding. We think that such a practice can be carried out with justice to all parties, and neither party would be in anywise prejudiced by the form of the plead-

ings. To require a Cross-Bill for the purpose of alimony and child support, or either of them, under the facts here present, is not in keeping with our interpretation of § 3 of Article 16, nor *Munich* and *Young*. We believe that alimony and child support are incidental parts of the marriage status, *Staub v. Staub,* 170 Md. 202, 208 (1936); *Keerl v. Keerl,* 34 Md. 21, 26 (1871); *McCoy v. McCoy,* 191 Iowa 973, 183 N. W. 377, 378; 24 Am.Jur.2d, *Divorce and Separation,* § 514, page 641, footnote 16, and consequently properly before the court in a divorce action, *Staub, supra,* at page 208, whether by Bill, Cross-Bill or Answer.

Judge Finan, speaking for the Court of Appeals in *Bowis v. Bowis,* 259 Md. 41, 43 (1970), stated:

> "However, this Court has repeatedly emphasized the fact that there are no pat rules or statutory mandates to be followed in making awards for alimony and support and maintenance. Indeed, one is hard-pressed to find any area of law where the need is more compelling to tailor the remedy to the facts of each particular case."

On the record before us, we cannot say the Chancellor's award of $75.00 per month alimony to Florence was clearly erroneous, if in fact it was erroneous at all. Rule 1086.

## ORTHODONTIC BILL

We think the Chancellor erred in awarding as part of the divorce decree the payment to Florence of $650.00 as partial reimbursement of the orthodontic bill that she had paid *prior to the divorce action.* In *Hull v. Hull,* 201 Md. 225 (1953), the Court of Appeals refused to allow a provision in a divorce decree that provided for the father to pay "unusual medical and dental expenses of the infant children." There, the Court, in referring to its earlier decision in *Kriedo v. Kriedo,* 159 Md. 229 (1930), wherein a petition was filed in the divorce proceeding,

*after the divorce,* praying payment of hospital, medical, surgical and funeral expenses of $712.10, said:

> "In sustaining a demurrer to that petition this court pointed out that the father was under the common law obligation to support the child during its minority and this obligation continued without regard to the divorce decree, unless in that decree the court should order that the child be supported by someone other than the father."

The Court of Appeals held that the obligation was one at law, not equity, and further quoting from *Kriedo, supra,* said:

> "Our conclusion, therefore, is that the father is primarily liable for the extraordinary necessary expenses shown to have been incurred for the benefit of his deceased minor child, which liability is to the persons rendering the service in cases where those rendering services have not been paid, and that the mother is entitled to reimbursement from the father in those cases in which payment has been made by her, but that upon the refusal of the father to pay, the remedy is by a suit at law wherein she is entitled to have a jury pass upon questions of fact, including the inquiry as to whether the services were rendered, whether they were necessary, and whether the charge was a reasonable and proper one."

See also *Frank v. Frank,* 203 Md. 361 (1953).

An equity court has no jurisdiction to compel a father to pay unusual medical expenses in retrospect, *Gregg v. Gregg,* 199 Md. 662 (1952), or after a decree of divorce has been entered. *Hull v. Hull, supra; Kriedo v. Kriedo, supra. Fainberg v. Rosen,* 12 Md. App. 359.

We hold, therefore, that the Chancellor committed reversible error in decreeing that Robert should pay to Florence the sum of $650.00 "toward payment of orthodontist's services."

## COUNSEL FEE

Florence's solicitor submitted a petition for counsel fee in the amount of $1271.00. The petition embraced a period commencing in 1967 and continuing through the trial. The court's decree provided for the payment to Florence's counsel of $600.00 by Robert, who suggests to us that the fee is not "in line with existing Maryland statutory and Case Law." Florence does not here attack the reduction in the amount of the fee. In *Quinn v. Quinn,* 11 Md. App. 638, 652 (1971), Chief Judge Murphy, for this Court, said:

> "Counsel fees should be awarded according to the ordinary factors of labor, skill, time, and benefit; and the amount of the fee cannot be wholly disassociated from the financial resources of the party charged."

The Court of Appeals in *Steward v. Steward,* 256 Md. 272, 283 (1969), stated:

> "Competent trial lawyers know that if a case is well-prepared and well-tried it may be likened to an iceberg. A very small portion of an iceberg appears above the surface of the water. Many hours are spent prior to actual court appearance in a case, particularly in a domestic relations case which is bitterly contested, * * *."

Our review of the record fails to disclose that the trial judge abused his discretion in granting to Florence's counsel a fee of $600.00, nor do we believe his judgment was clearly wrong. *Mullinix v. Mullinix,* 12 Md. App. 402 (1971).

> *Decree affirmed in part: reversed in part and remanded for the passage of a decree in accordance with this opinion.*
>
> *Costs to be paid by appellee-cross appellant.*